[Cite as *State v. Johnson*, 2014-Ohio-5069.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26028 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2013-CR-624 |
| v. | : | |
| | : | |
| KEITH A. JOHNSON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 14th day of November, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

DANIEL E. BRINKMAN, Atty. Reg. #25365, Suite 2000, Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Keith Anthony Johnson appeals from his convictions for Felonious Assault, with firearm specifications, and for Having a Weapon While Under a Disability.   He contends that his convictions are not supported by sufficient evidence, and are against the manifest weight of the evidence.   We disagree.   Accordingly, the judgment of the trial court is Affirmed.

## I.   Shots Are Fired at a Car, Wounding a Passenger Inside

{¶ 2}    One evening in February, 2013, between 10:00 and 10:30 in the evening, La Shanda Starks was driving a car owned by Kylie McComb.   McComb was in the front passenger seat.   They were going to Starks's roommate's mother's home in the Hilltop Apartment complex to retrieve Starks's key and identification, on their way to Columbus.

{¶ 3}    Upon arriving at the apartment complex, Starks parked in the parking lot near her roommate's mother's apartment.   Starks phoned her roommate, Telania Brown.   When Brown came out of the apartment, Johnson, her boyfriend, was following her.   Johnson and Brown appeared to be having an argument.   Starks got out of the car and met with Brown on the sidewalk in front of the car.   McComb remained in the car.

{¶ 4}    Brown decided that she wanted to go with Starks and McComb to Columbus. She got in the backseat, on the passenger's side, and slid over behind the driver's seat.

{¶ 5}    Johnson went to the passenger's side of the car, put his arm in the window, and began groping and talking to McComb, whom he had never previously met.   McComb concluded that he was trying to make Brown jealous.   The window control on the passenger

door was broken, so McComb asked Starks to raise the passenger window, thinking that Johnson would remove his arm. Johnson did not remove his arm, which became stuck inside the partially closed window. McComb then asked Starks to lower the window just a little, so that she could push Johnson's arm outside the window. Starks complied, and McComb succeeded in pushing Johnson's arm outside the window.

{¶ 6} At some point, Starks began driving the car out of the parking lot. Also, after McComb pushed Johnson's arm out of the window, shots were fired. At one point, McComb testified that the shots were fired two seconds after she pushed Johnson's arm out of the window; at another point, McComb testified that: "It [the first shot] was right after [Johnson's] arm got off the window."

{¶ 7} McComb testified that she did not see Johnson with a gun, but she saw flashing in the rear-view mirror on her side of the car when the first shot was fired. She also testified that "we were moving forward" when the shots were fired. McComb testified that she was certain that she was shot while they were still in the parking lot.

{¶ 8} McComb was shot in her leg and in her back. Starks drove the car out of the parking lot, turned left on Blanch Street, and then turned left again on McCabe Street. McComb ducked down when the shooting started.

{¶ 9} As soon as they left the parking lot, Brown received a phone call, which McComb described as follows:

> A. I heard him say – I heard him say, first it was blurry, something, something, something, B word, then he says, "You going to just – you leaving – so you're leaving." And I don't think at this time this person on the car realized that

anything – I think he must just wanted to be dramatic, shoot the car up. But he shot me up instead.

> Q. Okay. All right. And how long was she on the phone, Selena [sic] on the phone?
>
> A. She got right off the phone with him. She says, "Kendry["] (phonetic) – or, you know, and then she – "Man, we going to the hospital," she tells him where we're going. And to me, it was said to me from her, "Are you going to tell – f*ck it," excuse me, "Go ahead."

{¶ 10} They went straight to the hospital, arriving in about ten minutes. McComb and Brown were admitted and treated – McComb for her gunshot wounds, and Brown for injuries resulting from "glass all over her face and all shards in her chest, arms."

{¶ 11} Theodore Trupp, a police officer responding to the scene, found four spent shell casings in McCabe Street, on the south side of the street, near the sidewalk. Ronald Christoffers, an evidence technician, collected the casings. He testified that it was about 120 feet from the apartment parking lot to where the casings were found. Two copper jackets and one lead core bullet were found in the car, but no effort was made to match them with the shell casings recovered in McCabe Street.

## II. The Course of Proceedings

{¶ 12} Johnson was arrested and charged with one count of Felonious Assault (serious physical harm), in violation of R.C. 2903.11(A)(1), and three counts of Felonious Assault (deadly weapon), in violation of R.C. 2903.11(A)(2), and one count of Having a Weapon While Under a Disability, in violation of R.C. 2923.13(A)(2). Two of the Felonious Assault counts alleged McComb as the victim; the other two alleged Starks and Brown as the victim, respectively. All of the Felonious Assault counts were accompanied by firearm

specifications.

{¶ 13}   The two Felonious Assault counts with McComb as the victim, and the Having a Weapon While Under a Disability count were tried to a jury.   Johnson was convicted on all these counts and the firearm specifications.   Later, the other two Felonious Assault counts were dismissed.   The trial court merged the Felonious Assault (deadly weapon) conviction into the Felonious Assault (serious physical harm) conviction, and also merged the two firearm specifications.   Johnson was sentenced to eight years in prison for Felonious Assault, to three years for Having a Weapon While Under a Disability, and to three years for the firearm specification, with all sentences to be served consecutively, for a total of fourteen years.

{¶ 14}   From his conviction and sentence, Johnson appeals.


### III.   Johnson's Convictions Are Supported by Sufficient Evidence,
### and Are Not Against the Manifest Weight of the Evidence

{¶ 15}   Johnson's sole assignment of error is as follows:

APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED WHERE THE GUILTY FINDING ON COUNT ONE, FELONIOUS ASSAULT (SERIOUS HARM), COUNT TWO, FELONIOUS ASSAULT (DEADLY WEAPON) WITH FIREARM SPECIFICATIONS AND COUNT FIVE, HAVING WEAPONS WHILE UNDER DISABILITY, BY THE TRIER OF FACT WAS: (A) NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE AND (B) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16}   Johnson questions the sufficiency of the proof that he was the person who fired the shots at McComb's car, wounding her.   He argues that McComb's testimony that Johnson was in the parking lot at the apartment complex, combined with the discovery of the four shell casings in McCabe Street, 120 feet from the parking lot, is inconsistent with Johnson's being the person who fired the shots.

{¶ 17}   Johnson made this argument to the jury.   In response, the State argued, in its rebuttal closing argument, that Starks identified Johnson as the shooter.   This was not proper argument.   McComb testified, but neither Starks nor Brown testified.   The State presented the testimony of the investigating police officer, Sarah Moody, who testified that Starks had identified Johnson as the shooter.   When this testimony was objected to, the State was at pains to disclaim that Starks's statement was not being presented as proof of the identity of the shooter, but merely to explain why Moody proceeded with her investigation in the way that she did:

> And again – well, I can do that, but again, Your Honor, this is the responding officer who's out on the scene developing an investigation of the suspect.   Again, *this is not for the truth of the matter, this is the guy that actually committed this crime*, but the effect on the listener because she's going to testify the many more steps that she took in this investigation and what information led her to do what.   *It's not for the purposes of the fact that this is the guy that actually shot*.   And the fact that she continued on, Telania's mom doesn't know that this is guy [sic] who shot, she just[1] knows that this is Telania's boyfriend.   But she's just getting information throughout, but I think it's important to

---

[1] Telania Brown's mother did not testify at the trial, either.

establish where they started from Point A in their investigation and ended up in that (indiscernible). (Emphasis added.)

{¶ 18} The trial court ultimately sustained Johnson's objection to the particular question, and gave a limiting instruction that the hearsay statements to which Moody had testified were being admitted to show why the officer proceeded with the investigation as she did. It was therefore improper for the State to have argued to the jury that it should consider those out-of-court statements in determining whether Johnson was, in fact, the person who fired the shots. No objection was interposed to this part of the State's closing argument, and no error has been assigned in this regard.

{¶ 19} We conclude, however, that it would be improper for us to consider the out-of-court statements made to Officer Moody in evaluating Johnson's claim that the evidence in the record is insufficient, or that his convictions are against the manifest weight of the evidence. We also caution the State that its improper use of evidence admitted for a different purpose to persuade a jury of a defendant's guilt may, in some cases, bolster a claim that the jury lost its way, by providing an explanation for the jury's having lost its way.

{¶ 20} The State suggests, reasonably in our view, that McComb, under the stress of coming under fire and being wounded, may not have had a completely accurate recollection of the sequence of events. McComb did testify that at one point, at least, the car was moving no more than five miles per hour as it left the apartment complex. This, combined with Christoffer's testimony that a running man could have traversed the distance from the apartment parking lot to the location of the four shell casings found on McCabe Street in ten to fifteen seconds, supports a reasonable inference that the jury may have made, that Johnson pursued the

car out of the parking lot and fired at it while he was on McCabe Street.

{¶ 21} McComb testified that no one else besides Johnson was interacting with the car and its occupants in the time just before the shooting. She also testified that Johnson had been arguing with Brown, and appeared to be upset with her sudden decision to leave with McComb and Starks, as further evidenced by the phone call that Brown received as they were driving away, which the jury could reasonably infer to have been from Johnson.

{¶ 22} Also, Johnson was not aided by his own testimony. Although he denied that he was the shooter, he could not explain why he left the scene about twenty minutes later without having notified the police that someone had fired shots in the vicinity of his girlfriend. He also attempted to minimize his association with Brown, but had to admit that he received mail at her residence.

{¶ 23} We conclude that a reasonable jury could have found, from the evidence in this record, that Johnson was the person who fired the shots at McComb's car, wounding her. This fact, in turn, would prove both the firearm specifications and the Having Weapons While Under a Disability count, since Johnson conceded he was under a disability.

{¶ 24} We further conclude, notwithstanding the State's improper reference in closing argument to out-of-court statements admitted for a purpose other than to prove that Johnson was the shooter, that this is not the rare case where the jury lost its way, resulting in a manifest miscarriage of justice. Johnson's convictions are not against the manifest weight of the evidence.

{¶ 25} Johnson's sole assignment of error is overruled.

## IV.   Conclusion

{¶ 26}   Johnson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Daniel E. Brinkman
Hon. Steven K. Dankof